STATE OF NEBRASKA EX REL. RANDOLPH WOOD, DIRECTOR,
DEPARTMENT OF ENVIRONMENTAL QUALITY, APPELLANT, V.
FISHER FOODS, LTD., A NEBRASKA CORPORATION, APPELLEE.
581 N.W. 2d 409

Filed July 10, 1998.    No. S-96-222.

Don Stenberg, Attorney General, and William L. Howland for appellant.

James E. Gordon, of DeMars, Gordon, Olson, Recknor & Shively, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and STEPHAN, JJ.

GERRARD, J.

The State of Nebraska filed a petition in district court, seeking the recovery of a civil penalty from Fisher Foods, Ltd., for violations of Nebraska's Environmental Protection Act (EPA). Fisher Foods demurred to the petition on the basis that the district court lacked subject matter jurisdiction. Agreeing with Fisher Foods, the district court found that subject matter jurisdiction had not been conferred upon it because the State failed to issue a complaint to Fisher Foods by which a final decision of the director of the Department of Environmental Quality (DEQ) could be reached and from which an appeal could be taken to the district court. After sustaining the demurrer, the district court dismissed the action because the 1-year statute of limitations had expired since the time of the filing of the petition. The State appeals. We determine that the district court did not have subject matter jurisdiction; however, since the State should have been afforded a reasonable opportunity to amend its petition to cure the jurisdictional defect, we reverse, and remand the cause to the district court for further proceedings.

## BACKGROUND

On September 22, 1995, the State filed a petition in district court, alleging that on September 24, 1994, Fisher Foods discharged liquid waste containing sludge from its cooking apparatus into the State's waters, specifically, Antelope Creek. Under a National Pollutant Discharge Elimination System permit issued by the DEQ, Fisher Foods was authorized to discharge liquid waste from its facility into Antelope Creek. However, Fisher Foods' permit dictated that "[s]ludge shall be

disposed of or utilized in a manner approved by the [DEQ]." The State alleged that because Fisher Foods' permit did not authorize the discharge of sludge collected in cooking devices and because Fisher Foods failed to report its noncompliance in discharging such sludge, Fisher Foods violated the EPA. Based on these violations, the State sought the recovery of a civil penalty.

Fisher Foods demurred to the petition, contending that the district court lacked subject matter jurisdiction. The district court found that it did lack subject matter jurisdiction for the reason that the State failed to issue a complaint to Fisher Foods regarding the alleged EPA violations by which a final decision of the director of the DEQ could be reached and from which an appeal could be taken to the district court. After sustaining the demurrer, the district court dismissed the action because the 1-year statute of limitations had expired since the time of the filing of the petition. The State appeals.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Syracuse Rur. Fire Dist. v. Pletan, ante* p. 393, 577 N.W.2d 527 (1998).

Statutory interpretation presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Cox Cable of Omaha v. Nebraska Dept. of Revenue, ante* p. 598, 578 N.W.2d 423 (1998); *PLPSO v. Papillion/ LaVista School Dist.*, 252 Neb. 308, 562 N.W.2d 335 (1997).

## ASSIGNMENTS OF ERROR

The State contends that the district court erred in (1) finding that it lacked subject matter jurisdiction because the State failed to issue a complaint to Fisher Foods regarding the alleged violations by which a final decision of the director of the DEQ could be reached and from which an appeal could be taken to the district court and (2) dismissing the action without affording

the State a reasonable opportunity to amend its petition to cure the jurisdictional defect.

## ANALYSIS

The statutes at issue in the instant case are Neb. Rev. Stat. §§ 81-1507, 81-1508.02, and 81-1509 (Reissue 1994). Section 81-1507(1) provides in relevant part that

> [w]henever the director [of the DEQ] has reason to believe that a violation of any provision of the Environmental Protection Act . . . has occurred, he or she may cause a written complaint to be served upon the alleged violator . . . . The complaint shall specify the provision of the act . . . alleged to be violated and the facts alleged to constitute a violation thereof and shall order that necessary corrective action be taken within a reasonable time to be prescribed in such order. Any such order shall become final unless each person named therein requests in writing a hearing before the director no later than thirty days after the date such order is served. In lieu of such order, the director may require that the alleged violator appear before the director at a time and place specified in the notice and answer the charges complained of.

Further, § 81-1508.02 provides in relevant part that

> (1) [i]t shall be unlawful for any person:
>
> . . . .
>
> (b) [t]o violate any . . . water . . . quality standards . . . or limitations, any permit or license condition or limitation . . . or any monitoring, reporting, or record-keeping requirements contained in or issued or entered into pursuant to the Environmental Protection Act . . . .
>
> . . . .
>
> (2) Each violation of this section . . . shall subject a person to a civil penalty of no more than ten thousand dollars per day. . . . The amount of the penalty shall be based on the degree and extent of the violation, the size of the operation, and any economic benefit derived from noncompliance.

Finally, § 81-1509 provides that "[a]n appeal may be taken from any final decision of the director, and the appeal shall be in accordance with the Administrative Procedure Act."

The State asserts that the mandates of § 81-1507(1), specifically, the requirement to issue a complaint, apply only when the director of the DEQ decides to enforce alleged EPA violations by administrative action. The State argues that in the instant case, the director of the DEQ chose to enforce the alleged EPA violations by instituting a judicial action, seeking the recovery of a civil penalty pursuant to § 81-1508.02. Because § 81-1508.02 contains no facial requirement that the State issue a complaint to the alleged violator, the State claims that the district court did have subject matter jurisdiction.

Conversely, Fisher Foods contends that when the director seeks the imposition of a civil penalty, the director must first issue a complaint, giving notice of the violations and either ordering that corrective action be taken or requiring the violator to appear before the DEQ to answer the charges. Fisher Foods claims that it is only from a complaint or a complaint and a subsequent hearing that the director can render a final decision, thereby providing a basis for appealing and, thus, for conferring subject matter jurisdiction upon the district court. Therefore, since a complaint was not issued, Fisher Foods argues that the district court lacked subject matter jurisdiction.

Accordingly, the issue we must decide is whether a complaint must be issued to the alleged violator when the director seeks the imposition of a civil penalty in order to confer subject matter jurisdiction upon the district court.

## COMPLAINT

Before determining whether the issuance of a complaint is a prerequisite to the imposition of a civil penalty, we must first decide whether the director is required under any circumstances to ever issue a complaint when pursuing enforcement of EPA violations. As previously stated, § 81-1507(1) states that "[w]henever the director [of the DEQ] has reason to believe that a violation of any provision of the Environmental Protection Act . . . has occurred, he or she *may* cause a written complaint to be served upon the alleged violator . . . ." (Emphasis supplied.) The State asserts that because the Legislature used the term "may" in the statute, the Legislature intended to give the director discretion in deciding whether or not to issue a com-

plaint when pursuing enforcement of EPA violations. Conversely, Fisher Foods contends that the term "may" in the statute gives the director only initial discretion in deciding whether to pursue enforcement of an EPA violation. However, Fisher Foods argues that if the director decides to pursue enforcement of an EPA violation, then the statute requires the director to issue a complaint to the alleged violator.

Generally, the word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. *State ex rel. Scherer v. Madison Cty. Comrs.*, 247 Neb. 384, 527 N.W.2d 615 (1995); *Malzahn v. Transit Authority*, 244 Neb. 425, 507 N.W.2d 289 (1993). In addition, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995); *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995). It is the duty of the court, as far as practicable, to give effect to the language of a statute and to reconcile the different provisions of it so that they are consistent, harmonious, and sensible. *Hoiengs v. County of Adams, ante* p. 64, 574 N.W.2d 498 (1998).

In the instant case, if the word "may" were given its ordinary, discretionary meaning and the director chose not to issue a complaint when pursuing enforcement of EPA violations, all portions of § 81-1507 would not be given effect, and thus, the statute's objective would be defeated. For instance, under § 81-1507(1), an alleged violator must receive a complaint giving notice of the alleged violations and an order of corrective action before that portion of § 81-1507(1) which guarantees the violator the right to request a hearing on the violations and allows the director to render a final order can be effectuated. In addition, a complaint must be issued to effectuate that portion of the statute which states that "[t]he director shall afford [the alleged violator] an opportunity for a fair hearing [on the alleged violations] . . . at the time and place specified in the [complaint]." § 81-1507(2). Thus, if a complaint was never issued in the enforcement of EPA violations, the alleged violator would never be afforded the opportunity to exercise his or

her guaranteed right under the statute to request a fair hearing on the alleged violations.

Moreover, in the absence of a complaint containing the director's final decision or a complaint and a hearing wherein the director renders a final decision pursuant to § 81-1507(1), there can exist no final decision to serve as the basis for appealing, thereby rendering moot § 81-1509, which states that "[a]n appeal may be taken from any final decision of the director . . . ." We bear in mind that in determining the meaning of a statute, an appellate court may conjunctively consider and construe a collection of statutes which pertain to a certain subject matter to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Abboud v. Papio-Missouri River NRD*, 253 Neb. 514, 571 N.W.2d 302 (1997); *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997). Based on the foregoing, we determine that the Legislature intended § 81-1507(1) to be interpreted to mean that the director of the DEQ is not required to issue a complaint for each and every possible EPA violation; however, if the director decides to pursue enforcement of an EPA violation, then the director is required to issue a complaint meeting the necessary requirements of the statute. Nonetheless, the question remains as to whether the director is required to issue a complaint when enforcing EPA violations by seeking the imposition of a civil penalty.

## CIVIL PENALTY

Essentially, the State asserts that the director is not required to issue a complaint to an alleged violator of the EPA when seeking the imposition of a civil penalty, since the mandates of § 81-1507(1), specifically, the requirement to issue a complaint, apply only when the director is pursuing enforcement of the alleged EPA violations by administrative action.

When interpreting a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Abboud v. Papio-Missouri River NRD, supra*; *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997).

Moreover, in determining the meaning of a statute, we would again conjunctively consider and construe a collection of statutes which pertain to a certain subject matter to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Abboud v. Papio-Missouri River NRD, supra; Snipes v. Sperry Vickers, supra.* Keeping the foregoing rules of construction in mind, we now proceed to an analysis of the relevant statutes to determine whether the director must issue a complaint to the alleged violator of the EPA when seeking the imposition of a civil penalty, in order to confer subject matter jurisdiction upon the district court.

Section 81-1507(1) authorizes the director of the DEQ to issue a complaint to the alleged violator of the EPA, giving notice of the alleged violations and either ordering that corrective action be taken or requiring the violator to appear before the DEQ regarding the EPA violations. It is only from the complaint or a complaint and a hearing that a final order can be rendered by the director, serving as a basis for an appeal in accordance with § 81-1509. Thus, under the EPA statutory scheme, in the absence of a complaint or a complaint and a hearing, there is no final order of the director from which to appeal and to confer subject matter jurisdiction upon the district court.

The State, however, asserts that § 81-1508.02 provides an alternative remedy, in the form of a civil penalty, for enforcing EPA violations and that under the plain language of this statute, the director is not required to issue a complaint. Thus, even though a complaint was not issued, the State claims that the district court does have subject matter jurisdiction. We do not agree, as it is apparent from the plain statutory language that the Legislature did not intend § 81-1508.02 to provide an alternative remedy whereby the director could circumvent the notice and hearing requirements of § 81-1507. If the Legislature had intended such a result, it could have so provided. The Legislature, however, did not do so. Thus, we determine that the director must satisfy the requirements of § 81-1507(1), specifically, that the director must issue a complaint, whenever he or she decides to pursue enforcement of EPA violations by seeking the imposition of a civil penalty pursuant to § 81-1508.02.

As further support for our interpretation of §§ 81-1507 and 81-1508.02, we look to the federal Clean Water Act, 33 U.S.C. §§ 1251 through 1387 (1994), the source of many of the provisions found in Nebraska's EPA. See, Natural Resources Committee Hearing, L.B. 570, 93d Leg., 2d Sess. 18-19 (Mar. 5, 1993); Agriculture Committee Hearing, L.B. 342, 86th Leg., 1st Sess. 21-22 (Feb. 2, 1979). Unlike the EPA, the Clean Water Act explicitly grants the administrator of the U.S. Environmental Protection Agency the discretion that the director of the DEQ claims to now have in the case at bar. The Clean Water Act provides that "the Administrator . . . shall issue an [administrative] order requiring such person to comply with [the Clean Water Act], *or* [he or she] shall bring a civil action . . . ." (Emphasis supplied.) 33 U.S.C. § 1319(a)(1) and (3). The failure of the Legislature to enact a provision explicitly providing for such discretion or authority to commence civil actions, as is found in the Clean Water Act, further evidences legislative intent that the director of the EPA not have this same power to commence a civil action, rather than an administrative action, for the imposition of a civil penalty.

Finally, we note that the Legislature, in enacting the EPA, did explicitly grant the director authority under certain circumstances to proceed directly to district court without first complying with the notice and hearing requirements of § 81-1507. For example, Neb. Rev. Stat. § 81-1508(1) (Reissue 1994) states that if a person "causes the death of fish or other wildlife," damages shall be recoverable, "in addition to the penalties provided in sections 81-1508.01 and 81-1508.02 . . . in a *civil action brought in the district court* of the county in which such violation . . . occurred." (Emphasis supplied.) Furthermore, § 81-1508(2) provides that the director, "in addition to the penalties provided by . . . sections 81-1508.01 and 81-1508.02 . . . may *petition the district court* for an injunction" for violations or threatened violations of the EPA. (Emphasis supplied.) In addition, § 81-1508(3) expressly provides that "[u]pon receipt of evidence that the handling, storage, treatment, transportation, or disposal of any solid waste or hazardous waste is presenting an imminent and substantial endangerment to the health of humans or animals or to the environment, the director may *petition the district court* for

an injunction . . . ." (Emphasis supplied.) However, this same grant of authority to proceed directly to district court is conspicuously absent from §§ 81-1507 and 81-1508.02, and thus, we construe such absence as further evidence that the director does not have the power to initiate a judicial action for the imposition of a civil penalty without complying with the notice and hearing requirements of § 81-1507.

In the case at bar, the petition filed by the State did not contain allegations of death or harm to fish and wildlife, nor did it contain a plea for an injunction; thus, no subject matter jurisdiction was conferred upon the district court in accordance with § 81-1508. Therefore, the district court could have obtained jurisdiction over the matter only if an appeal had been taken from a final order of the director rendered pursuant to a complaint or a complaint and a hearing. Accordingly, because the State did not allege in its petition that a complaint was issued to Fisher Foods whereby the director reached a final order, we determine that the district court did lack subject matter jurisdiction; thus, the district court did properly sustain Fisher Foods' demurrer.

Nevertheless, the State asserts that the district court erred in dismissing its cause of action without affording it an opportunity to amend its petition to remedy the jurisdictional defect. It is well settled that when a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. *Giese v. Stice*, 252 Neb. 913, 567 N.W.2d 156 (1997); *Larson v. Demuth*, 252 Neb. 668, 564 N.W.2d 606 (1997).

In the instant case, a reasonable possibility exists that the State could remedy the jurisdictional defect in its petition, and thus, leave to amend should have been granted by the district court. The defect could be remedied, for example, by the State's amending its petition to request an injunction for violations of the EPA. Accordingly, we determine that the dismissal of the State's cause of action was premature.

## CONCLUSION

Therefore, although the district court correctly determined that it lacked subject matter jurisdiction and properly sustained

Fisher Foods' demurrer, we conclude that the district court erred in dismissing the State's cause of action without affording the State an opportunity to amend its petition to remedy the jurisdictional defect. For this reason, we reverse the judgment and remand the cause to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

McCORMACK, J., participating on briefs.