PAYLESS BUILDING CENTER, INC., DOING BUSINESS AS BUILDERS HOW-TO WAREHOUSE, APPELLANT, V. L. DEAN WILMOTH AND SHIRLEY WILMOTH, COTRUSTEES OF THE L. DEAN WILMOTH AND SHIRLEY WILMOTH REVOCABLE LIVING TRUST DATED APRIL 26, 1994, AND JOHN DOE AND ___ DOE, HIS WIFE, REAL AND TRUE NAMES UNKNOWN, APPELLEES.

581 N.W. 2d 420

Filed July 10, 1998. No. S-97-416.

Patrick J. Nelson, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellant.

Larry W. Beucke, of Parker, Grossart, Bahensky & Beucke, for appellees.

White, C.J., Caporale, Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

Caporale, J.

The plaintiff-appellant, Payless Building Center, Inc., doing business as Builders HOW-TO Warehouse, seeks the foreclosure of a construction lien against realty titled in the defendants-appellees, L. Dean Wilmoth and Shirley Wilmoth, cotrustees of the L. Dean Wilmoth and Shirley Wilmoth revocable living trust dated April 26, 1994. The district court dismissed the action, concluding that being titled in the names of protected parties under the Nebraska Construction Lien Act, Neb. Rev. Stat. § 52-125 et seq. (Reissue 1993), the property was exempt from foreclosure. Payless thereupon appealed and successfully petitioned this court to bypass the Nebraska Court of Appeals, asserting that the district court erred in, among other things, concluding the cotrustees were protected parties under the lien act and not entering judgment in its favor, including prejudgment interest. We reverse, and remand with direction.

The dispositive issues present questions of statutory interpretation, matters which present questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State ex rel. Wood v. Fisher Foods, ante* p. 982, 581 N.W.2d 409 (1998); *Cox Cable of Omaha v. Nebraska Dept. of Revenue, ante* p. 598, 578 N.W.2d 423 (1998).

On April 16, 1994, the Wilmoths, who are husband and wife, as both grantors and trustees, entered into a joint revocable living trust agreement for estate planning purposes. The trust provides that as trustees, the Wilmoths have the power to control and direct all trust payments, add or remove trust property, and amend or revoke the trust.

In November 1995, the Wilmoths, as individuals, signed an agreement to purchase a house from Robert D. Edson and Beverly J. Edson, which Robert Edson was in the process of constructing. While the Wilmoths signed the purchase agreement as individuals, the agreement provided that the property was to be titled in the trust. On the same day the purchase agreement was signed, the Wilmoths paid a deposit via a check drawn

from the Wilmoths' personal account in a Wichita, Kansas, credit union. They later, as individuals, signed two addenda to the purchase agreement, and on February 14, 1996, paid the balance of the purchase price by a cashier's check drawn on a Wichita bank, which listed the Wilmoths as the remitters. The Wilmoths as individuals also signed the real estate closing statement as the buyers. On February 15, a warranty deed titled in the cotrustees, as set forth earlier, was recorded with the register of deeds. The Wilmoths at all times intended to and did occupy the subject property as a residence.

In building the house, Robert Edson purchased building materials from Payless, but failed to pay $24,981.36 of the principal sums owing for the materials used in the house. On April 30, 1996, Payless recorded a construction lien against the property, naming Robert Edson as the contractor and the Wilmoths as cotrustees of the trust.

If certain specified procedures are followed, the lien act provides for the creation, attachment, and enforcement of liens against real estate in favor of a person furnishing services or materials under a real estate improvement contract. §§ 52-126, 52-131, 52-133, 52-134, and 52-135. However, "a buyer who is a protected party takes free of all construction liens that are not of record at the time his or her title document is recorded." § 52-139(5). To the extent relevant here, a "protected party" is an "individual who contracts to . . . buy . . . residential real estate all or a part of which he or she occupies or intends to occupy as a residence." § 52-129(1)(a).

In determining whether the protection afforded a buyer by § 52-139(5) applies, we are bound by the rule that a statute is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous. *In re Estate of Peterson, ante* p. 334, 576 N.W.2d 767 (1998); *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995); *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993). See, also, *State ex rel. Wood v. Fisher Foods, supra.* In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of

statutory words which are plain, direct, and unambiguous. *In re Estate of Peterson, supra; Metropolitan Utilities Dist. v. Balka,* 252 Neb. 172, 560 N.W.2d 795 (1997); *PSB Credit Servs. v. Rich,* 251 Neb. 474, 558 N.W.2d 295 (1997).

The Wilmoths entered into the purchase agreement as individuals and paid the purchase price from their individual funds. Thus, there can be no question that they bought the property as individuals. It is also clear that they as individuals not only intended to but occupied the property as a residence. Therefore, they individually became protected parties as defined by § 52-129(1)(a). However, the exemption from foreclosure afforded by § 52-139(5) does not apply to them, for they did not record a title document in their individual names prior to the recording of Payless' lien. The language of § 52-139(5) makes clear that only where a buyer records the title document prior to the recording of the lien is the property exempted from foreclosure.

Neither does the exemption apply to the cotrustees. They are not the buyers, did not sign the purchase agreement, did not provide the purchase money, and did not as cotrustees occupy or intend to occupy the property as a residence. Nor are the cotrustees, as such, individuals as required by § 52-139(5). The plain and ordinary meaning of individual is a single human being as contrasted with a social group or institution. Webster's Third New International Dictionary, Unabridged 1152 (1993). That our Legislature used the word in its plain and ordinary sense is illustrated by its specifying that a protected party buyer takes free of liens "not of record at the time his or her title document is recorded." § 52-139(5). Individuals possess gender, cotrustees as such do not. Grantors of trusts create a legal entity separate and apart from themselves. Except as the law may otherwise provide, such grantors are not free to alternately embrace or disown their creation as their individual interests may dictate at a particular moment. As long as the trust exists, its separate nature must be respected.

Thus, Payless' assertion that the district court erred in holding the cotrustees to be protected parties is correct. However, Payless' claim that it is entitled to prejudgment interest is not.

Absent compliance with the provisions of Neb. Rev. Stat. § 45-103.02(1) (Cum. Supp. 1996), prejudgment interest is available only when the claim is liquidated, that is, when there is no reasonable controversy either as to the plaintiff's right to recover or as to the amount of such recovery. *Daubman v. CBS Real Estate Co.,* ante p. 904, 580 N.W.2d 552 (1998); *Blue Tee Corp. v. CDI Contractors, Inc.,* 247 Neb. 397, 529 N.W.2d 16 (1995). Here, there was a reasonable controversy concerning the right of Payless to recover. Thus, it is not entitled to prejudgment interest.

Accordingly, as noted in the first paragraph hereof, the district court's dismissal of the action is reversed and the cause remanded with the direction that it enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTION.