REQUESTED BY: Lieutenant Governor Rick Sheehy
Al Berndt, Assistant Director
Nebraska Emergency Management Agency
You have requested an Attorney General's opinion relating to certain activities of volunteers while involved in disaster response preparedness. Specifically, you have requested that we consider Neb. Rev. Stat. § 81-829.37 (purposes) in conjunction with Neb. Rev. Stat. § 81-829.55 (grant of immunity) of the Nebraska Emergency Management Act (Neb. Rev. Stat. §§ 81-829.36 to 81-829.75 (2003)) (the "Act"), and render our opinion as to whether training and exercising by volunteers for emergency response duty as a part of state, county or local government preparedness activities are immune from liability under the Act.
BACKGROUND AND RELEVANT STATUTORY PROVISIONS
According to information provided in your request, you have had recent conversations with a member of the Legislature and representatives of the state volunteer medical response systems which have formed within the state's public health districts. The conversations have focused on whether legislation is needed to "cover[] the activities of volunteer responders, specific to but not limited by, membership within the volunteer medical community while involved in disaster response preparedness." You state that the parties involved agree that their initial concerns relating to liability are addressed by Neb. Rev. Stat. §§ 81-829.52 through 81-829.55. For example, § 81 829.53 provides that first responders activated for duty by declaration of the Governor, and who are not employees of the state or a political subdivision, are entitled to compensation and "the same rights and immunities as are provided by law for the employees of this state." Additionally, Neb. Rev. Stat. § 81-829.55 protects an emergency management worker, [1] from liability for the death of or injury to persons or from property damage as a result of his or her activity, as long as the worker has complied with or reasonably attempted to comply with the provisions of the Act, and whose conduct does not constitute willful misconduct, gross negligence, or bad faith. You further indicate that when a governmental entity carries out an exercise using local, state or federal funding, and adheres to the guidance and protocols promulgated by the Department of Homeland Security, these activities fall under the Act. However, there are some local emergency managers and county boards who believe training and exercising are not functions under the Act, which has created reluctance at the local level to recognize the activities of volunteers in the context of liability.
You have also asked us to consider Neb. Rev. Stat. § 81-829.37 of the Act, which provides:
The purposes of the Emergency Management Act and the policy of the state are to:
 (1) Reduce the vulnerability of people and communities of this state to damage, injury, and loss of life and property resulting from natural, technological, or manmade disasters and emergencies, civil disturbances, or hostile military or paramilitary action;
 (2) Provide an emergency management system embodying all aspects of preparedness, response, recovery, and mitigation;
 (3) Clarify and strengthen the roles of the Governor, state agencies, and local governments in the mitigation of, prevention of, preparation for, response to, and recovery from disasters, emergencies, or civil defense emergencies;
 (4) Authorize and provide for cooperation and coordination of activities relating to mitigation of, prevention of, preparedness for, response to, and recovery from disasters, emergencies, and civil defense emergencies by agencies and officers of this state and its political subdivisions and similar state, local, interstate, federal-state, and foreign activities in which the state and its political subdivisions may participate;
 (5) Assist in mitigation and prevention of disasters, emergencies, and civil defense emergencies caused or aggravated by inadequate planning for and regulation of public and private facilities and land use; and
 (6) Provide for the funding of activities incidental to carrying out the purposes of the act.
Additionally, we find the language in Neb. Rev. Stat. § 81-829.39(4) pertinent to your inquiry, which defines "emergency management" as the preparation for and the carrying out of all emergency functions, other than functions for which military forces are primarily responsible, to mitigate, prevent, minimize, respond to, and recover from injury and damage resulting from disasters, emergencies, or civil defense emergencies. Emergency management functions include, but need not be limited to, firefighting services, police services, medical and health services, search and rescue services, engineering services, communications and warning systems, radiological preparedness, hazardous materials response, evacuation of persons from stricken areas, emergency welfare services, emergency transportation services, restoration of public utility services, and other functions related to civilian protection, together with all other activities necessary or incidental to the preparation for and carrying out of the functions listed in this subdivision. . . . (Emphasis added.)
ANALYSIS
Our analysis of your inquiry is guided by several principles of statutory construction. First, "[i]n the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous." Payless Building Center, Inc. v. Wilmoth, 254 Neb. 998, 1000-001, 581 N.W.2d 420, 423 (1998). "[A] statute is open for construction to determine its meaning only when the language used requires interpretation or may reasonably be considered ambiguous." City of Omaha v. Kum Go, L.L.C., 263 Neb. 724, 733,642 N.W.2d 154, 161 (2002). "A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari material with any related statutes." Zach v. Eacker, 271 Neb. 868, 872, 716 N.W.2d 437, 441 (2006).
Neb. Rev. Stat. § 81-829.37(2) states that it is the policy of the State of Nebraska to "[p]rovide an emergency management system embodying all aspects of preparedness, response, recovery, and mitigation. . . ." Subsection (3) requires clarifying and strengthening "the roles of the Governor, state agencies, and local governments in the mitigation of, prevention of, preparation for, response to, and recovery from disasters, emergencies, or civil defense emergencies. . . ." Subsection (4) authorizes increased coordination and cooperation of activities by federal, state and local entities "relating to mitigation of, prevention of, preparedness for, response to, and recovery from disasters, emergencies, and civil defense emergencies. . . ."
This language clearly and plainly indicates that the emergency management system of the state is to be predicated on "preparation" and "preparedness" in order for state and local responders to carry out the emergency functions enumerated in the Act. According to Webster's Unabridged Dictionary 1421 (Deluxe 2d Ed. 1983), "preparation" means, in pertinent part, "1. a preparing. 2. a being prepared; readiness. 3. something done to prepare; preparatory measure." "Preparedness" is "the state of being prepared." We recognize that the terms "training" and "exercising" are not mentioned in the Act per se. However, we believe that training and exercising are integral components of preparation and preparedness as those terms are used in the Act. Moreover, we note that under the Act, emergency management functions also include "all other activities necessary or incidental to the preparation for and carrying out of the functions listed in this subdivision." Thus, to the extent that volunteers are engaging in training and exercising to prepare for disaster and emergency situations, we believe those activities fall within the parameters of the Act, and immunity for any liability occurring as a result of those actions attaches.
CONCLUSION
For the reasons stated above, we conclude that Neb. Rev. Stat. § 81-829.55 of the Emergency Management Act grants immunity from liability arising from personal injury and property damage to volunteers engaged in training and exercising in preparation of disaster/emergency situations, except in cases of willful misconduct, gross negligence, or bad faith. As a result, we do not believe remedial legislation in this regard is necessary. However, the decision to pursue new legislation is ultimately yours to make.
Sincerely,
 JON BRUNING Attorney General
 Leslie S. Donley Assistant Attorney General
Approved by:
 ___________________________ Attorney General
[1] "Emergency management worker" is defined as any full-time or part-time paid, volunteer, or auxiliary employee of this state or other states, territories, or possessions of the federal government or any neighboring country or of any political subdivision thereof, of the District of Columbia, or of any agency or organization performing emergency management services at any place in this state subject to the order or control of or pursuant to a request of the state government or any political subdivision thereof and also includes instructors and students in emergency management educational programs approved by the Nebraska Emergency Management Agency or otherwise under the provisions of the Emergency Management Act (emphasis added). Neb. Rev. Stat. § 81 829.39(5) (2003).