DELMAN R. POLLY, APPELLEE AND CROSS-APPELLANT, V. RAY D.
HILDERMAN & COMPANY, A PARTNERSHIP, APPELLANT AND
CROSS-APPELLEE.
407 N.W.2d 751

Filed June 19, 1987.    No. 85-880.

Donn C. Raymond of Raymond, Olsen, Ediger & Ballew, P.C., for appellant.

John F. Wright of Wright & Sorensen, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an appeal in a wage collection matter from an order of the district court for Scotts Bluff County, Nebraska, in which the court sustained the plaintiff's motion for summary judgment and entered judgment in his favor. The defendant's

motion for summary judgment on its cross-petition was overruled, and that cross-petition was dismissed. Defendant appeals, and plaintiff cross-appeals.

The plaintiff, Delman R. Polly, and the defendant, Ray D. Hilderman & Company, a certified public accountancy firm, entered into a written employment contract which provided that Polly would supervise Hilderman's bookkeeping and data processing department. As part of the agreement, Polly was to bring his present clients to Hilderman, for which he would receive a deferred bonus of up to $300 per month for 60 months, based on fees generated by Polly during that first year. Polly earned this maximum bonus, which was, in effect, payment for the accounts he brought with him. He received the monthly installments until he terminated his employment in August of 1984. Upon this termination, Hilderman stopped paying the monthly bonus.

Polly filed suit, seeking recovery of the balance due on the bonus. Hilderman answered that it did not owe the remaining bonus because Polly, when he became office manager for a former account of Hilderman, had breached the covenant not to compete contained in the written employment contract. Hilderman also cross-petitioned for lost income of $640 per month due to the loss of that account.

On motions for summary judgment the district court found there was no dispute as to any material fact and that the covenant not to compete was unreasonable and unenforceable as a matter of law. The judgment entered for Polly was for the accrued bonus of 14 months from September 15, 1984, through October 15, 1985, at the rate of $300 per month, or a total of $4,200. The judgment also required Hilderman to pay the balance of the deferred bonus commencing November 15, 1985, and continuing for a total of 28 months. Judgment was also entered for Polly for mandatory attorney fees of $1,050, pursuant to Neb. Rev. Stat. § 48-1231 (Reissue 1984).

Hilderman contends the court erred when it found that the covenant not to compete was unreasonable and unenforceable as a matter of law and when it refused to find that Polly had forfeited his right to deferred bonus payments when he breached that covenant not to compete. Polly contends on

cross-appeal that the court erred in failing to award Polly attorney fees based on the full amount of the judgment. We affirm.

The further facts necessary to understand the disposition of this case are as follows. Hilderman had three offices—the main one in Scottsbluff, Nebraska, and two branch offices, one in Torrington, Wyoming, and one in Bridgeport, Nebraska. Polly did all of his work in the Scottsbluff office, never went to the Torrington office, and may have gone to the Bridgeport office once or twice. During Polly's first year of work with Hilderman, Polly worked on 96 accounts, 86 of which Polly brought with him. The following year, Polly serviced approximately 76 accounts, 36 of which he brought with him. During each of those years, Hilderman handled approximately 900 to 1,000 accounts. Hilderman admitted that it had clients with whom Polly had no contact and that it had clients Polly would not even have known. While Polly worked for Hilderman he serviced the Arthur E. Smith & Son Trucking account. When Polly terminated his employment, he went to work for that company.

Paragraph 11 of the written contract between Polly and Hilderman contained the restrictive covenant as follows:

EMPLOYER may consider EMPLOYEE a competing accountant and bookkeeper if, after termination of the EMPLOYER-EMPLOYEE agreement, EMPLOYEE practices public or private accountancy or bookkeeping services within three (3) years of the date of the termination and within thirty-five (35) miles of EMPLOYER'S office in Scottsbluff, Nebraska, or within thirty-five (35) miles of any branch office maintained by EMPLOYER in any city outside of Scottsbluff, Nebraska. Any of EMPLOYER'S accounts or clients retained by or which employ the EMPLOYEE for accounting or bookkeeping services during the three year time period shall be considered business of the EMPLOYER. In the event of EMPLOYEE'S breach of this covenant not to compete all deferred bonus payments due EMPLOYEE shall forthwith terminate. In addition EMPLOYER shall be entitled to enforce this covenant by

any other available legal remedies, and shall be entitled to any legal and associated expenses of any accounting action necessitated to enforce this covenant.

Based on the foregoing facts, the district court found that the restrictive covenant was unreasonable and unenforceable as a matter of law. We agree.

[T]here are three general requirements for a valid, partial restraint of trade such as a postemployment covenant not to compete, namely: "First, is the restriction reasonable in the sense that it is not injurious to the public; second, is the restriction reasonable in the sense that it is no greater than is reasonably necessary to protect the employer in some legitimate interest; and, third, is the restriction reasonable in the sense that it is not unduly harsh and oppressive on the employee."

*American Sec. Servs. v. Vodra*, 222 Neb. 480, 486, 385 N.W.2d 73, 78 (1986). Because the record does not suggest that enforcement of the restrictive covenant will be detrimental to the public, we will address the second requirement; that is, whether the restriction is reasonable in the sense that it is no greater than is reasonably necessary to protect Hilderman in some legitimate interest.

In *American Sec. Servs.*, *supra*, a case in which a salesperson and a security company entered into an employment contract which contained a postemployment covenant not to compete, we addressed this requirement of a legitimate interest of the employer. We stated: "[A]n employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but is not entitled to protection against ordinary competition from a former employee." *Id.* at 486, 385 N.W.2d at 78. Quoting *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986), we went on:

"To distinguish between 'ordinary competition' and 'unfair competition,' courts and commentators have frequently focused on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. Where an employee has substantial personal contact with the employer's customers, develops goodwill with such

customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition."

222 Neb. at 486-87, 385 N.W.2d at 78. Applying this reasoning, we then determined that the security company had a legitimate business interest in customer goodwill which it could protect through the use of a postemployment covenant not to compete.

Although the record is somewhat sketchy as to the nature of services Polly performed for Hilderman, the record does reflect that Polly had substantial personal contact with approximately 46 of Hilderman's accounts. Consequently, just as a salesperson had the opportunity to appropriate the customer goodwill belonging to his employer in *American Sec. Servs.*, so did Polly have the opportunity to appropriate Hilderman's customer goodwill. We thus believe, as we similarly did in *American Sec. Servs.*, that Hilderman had a legitimate business interest in customer goodwill which it could protect through the use of a postemployment covenant not to compete.

However, the fact that Hilderman had a legitimate business interest in customer goodwill does not automatically validate its postemployment covenant not to compete. That covenant must also be "no greater than is reasonably necessary" before it will be enforced by this court.

The language of the covenant between Polly and Hilderman is confusing at best. The first sentence does not really prohibit Polly from practicing accounting or bookkeeping for 3 years within 35 miles of each of Hilderman's offices; it just states that Hilderman may consider Polly a competing accountant if he so practices. The second sentence does not really prohibit Polly from being employed for the next 3 years by clients of Hilderman; it only provides that if Polly is employed by Hilderman's clients during the next 3 years, that employment shall be considered business of Hilderman's. Then, the third sentence provides that if Polly breaches this "covenant not to compete," all deferred bonus payments will terminate. Finally, Hilderman was given the right to enforce the covenant by any other available legal remedies.

From this, it is unclear what Polly promised he would not do. But even if we were to interpret the covenant in the narrowest way possible—that for 3 years Polly could not be employed by any of Hilderman's clients who lived within 35 miles of any of Hilderman's three offices—we still believe that the covenant is greater than is reasonably necessary to protect Hilderman's legitimate interest in customer goodwill.

In reaching this conclusion we are guided by the principles announced in our former decisions involving covenants not to compete when appropriation of customer goodwill was involved. In *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982), we determined that a covenant which required an ex-partner in an accounting partnership to pay any wages he earned to the other partners if he worked for clients or former clients of the partnership for 3 years following his termination was overly broad and unenforceable. We stated:

> The covenant in question undertakes to prohibit Salmen from earning fees from clients or former clients of the partnership, or from such clients' officers and agents, no matter where they may be. Whatever interest Johnson may have in its present clients, it certainly can have none in its former clients; in any event, the forfeiture of fees is not limited to those generated from serving Johnson clients in Hastings, where Salmen rendered his personal services. It may well be that the nature of the accounting practice is such that a partner may serve clients in cities other than where he offices. That fact, however, does not meet the objection that the restriction includes services to former Johnson clients *and clients which Salmen had not served and did not know. On that ground alone, the covenant is impermissibly broad and is therefore unreasonable and unenforceable.*

(Emphasis supplied.) *Id*. at 129, 317 N.W.2d at 904.

However, in *Dana F. Cole & Co. v. Byerly*, 211 Neb. 903, 320 N.W.2d 916 (1982), we held that a covenant which restricted a former branch manager of an accounting firm from practicing accounting within 75 miles of the office he managed was reasonable and enforceable. In so deciding, we stated:

> The evidence shows that the branch managers have a very personal relationship with the clients served. . . . While the

trade area within which the covenant controls seems broad, there is no evidence introduced which would show that the area is actually smaller. In fact, Mr. Hinze testified that 75 to 80 percent of the clients were located in the 75-mile radius.

*Id*. at 907, 320 N.W.2d at 918.

Finally, in *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986), the salesperson for the security company signed a noncompetition agreement which provided that he would not, for 3 years, solicit business from, contract with, or take employment with any customer or former customer of the security company where he had "(a) worked physically upon said customers premise (b) acted in a supervisory capacity with respect to said premises (c) acted as a salesman for the American Security Services in soliciting said customers business." *Id*. at 482, 385 N.W.2d at 75. In determining that that covenant was reasonable and enforceable, we stated:

Vodra was not unconditionally prohibited from seeking customers within the sales territory covered during his employment with American. Rather, the covenant not to compete prohibited Vodra's soliciting American's customers contacted in the combined circumstances, conditions, or situations specified in that covenant. Such restriction on Vodra, as a former employee of American, provides minimal restraint on competition and is reasonable.

*Id*. at 490, 385 N.W.2d at 80.

From these cases, then, a rule regarding the validity of a covenant not to compete which is aimed at preventing a former employee from unfairly appropriating the customer goodwill which properly belongs to the employer can be gleaned. Such a covenant may be valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact. This is in accord with our decision in *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986), in which we determined that one of the reasons a covenant not to compete was unreasonable and unenforceable was because the employee had no personal and business-based contact with the employer's customers or prospective

customers. Because the covenant not to compete in this case attempts to restrict Polly from soliciting or working for Hilderman's clients with whom Polly did not work and did not even know, it is greater than is reasonably necessary to protect Hilderman's legitimate interest in customer goodwill, and is thus unreasonable and unenforceable.

In previous cases of this nature we have declined, for various reasons, to rewrite the covenant so as to make it "no greater than is reasonably necessary." See, e.g., *Boisen v. Petersen Flying Serv., supra; Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982). We once again do not believe that this is a proper case for reformation of the covenant not to compete. First, the covenant itself is so ambiguous that we are not even sure it is a true covenant not to compete. Second, Hilderman did not request reformation in its answer and cross-petition and did not argue that issue either at the trial court level or on appeal.

This brings us, then, to the issue raised by Polly on cross-appeal. Polly complains to this court about the amount of attorney fees Hilderman was ordered to pay as part of the judgment. Section 48-1231 provides in pertinent part:

> An employee having a claim for wages which are not paid within thirty days of the regular pay day designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee shall establish a claim and secure judgment on the claim, such employee shall be entitled to recover (1) the full amount of the judgment and all costs of such suit, and (2) if such employee has employed an attorney in the case, an amount for attorney fees assessed by the court *which fees shall not be less than twenty-five per cent of the unpaid wages*. If the cause is taken to an appellate court and plaintiff shall recover judgment, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney fees in such appellate court which fees shall not be less than twenty-five per cent of the unpaid wages.

(Emphasis supplied.) Polly argues that the court did not figure the attorney fees using the proper amount of unpaid wages.

The record reflects that Polly's bonus was $300 per month, to

be paid on the 15th of each month for 60 months. Hilderman had paid Polly $300 for 18 months, and then stopped when Polly terminated his employment. Judgment was rendered on October 15, 1985, at which time Hilderman had not been paying bonuses for 14 months. The court therefore entered judgment for Polly and against Hilderman in the amount of $4,200, which is 14 months multiplied by $300 per month. The court then went on and ordered Hilderman to pay to Polly $300 per month from November 15, 1985, and continuing for a total of 28 months, as payable under the employment contract. Finally, the court ordered Hilderman to pay attorney fees of $1,050, which is 25 percent of the $4,200 Hilderman was ordered to pay immediately.

Polly believes the court should have figured attorney fees using the amount Hilderman was ordered to pay immediately plus the amount it was ordered to pay as it became due. This would amount to 25 percent of $12,600 (28 months multiplied by $300 per month, plus $4,200). This $12,600 is what Polly believes is "unpaid wages" as used in § 48-1231.

The definition section of the Nebraska Wage Payment and Collection Act does not define "unpaid wages." However, § 48-1231 itself does state in part that "[a]n employee having a claim for wages which are not paid within thirty days of the regular pay day designated or agreed upon may institute suit for *such unpaid wages* in the proper court." (Emphasis supplied.) Thus, "unpaid wages" means "wages which are not paid within thirty days of the regular pay day designated or agreed upon."

The parties in this case had agreed that the bonus payments would be paid monthly over 60 months. At the time of the judgment, Hilderman owed 14 payments, and attorney fees were properly figured on those "unpaid wages." However, the remaining 28 payments were not yet overdue and therefore were not "unpaid wages" upon which an order of attorney fees could properly be figured.

We therefore affirm the judgment of the district court and also order the defendant to pay to the plaintiff $1,050 as attorney fees on appeal, pursuant to § 48-1231.

AFFIRMED AS MODIFIED.