PROFESSIONAL BUSINESS SERVICES CO.,
A NEBRASKA CORPORATION, APPELLANT, V.
STEPHEN J. ROSNO, APPELLEE.

589 N.W. 2d 826

Filed February 19, 1999.    No. S-97-1106.

Robert R. Otte and Joseph E. Dalton, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellant.

Jerry L. Pigsley, of Harding, Shultz & Downs, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Professional Business Services Co., a Nebraska corporation (PBS), appeals from an order of the district court for Lancaster County, dated September 19, 1997, granting Stephen J. Rosno's demurrer to PBS' second amended petition and dismissing PBS' second amended petition. In its second amended petition, PBS alleged that Rosno had breached a noncompetition covenant in an employment contract entered into between Rosno and PBS, and PBS sought $41,433 in liquidated damages. For the reasons recited below, we reverse, and remand with directions to reinstate the second amended petition.

## BACKGROUND

On September 11, 1996, PBS filed a petition against Rosno, stating that it is a Nebraska corporation having its principal place of business in Lincoln, Nebraska. PBS is generally in the business of providing accounting services. PBS alleged that on October 1, 1992, PBS entered into a contract with Rosno which provided that Rosno would begin work for PBS on October 1,

with Rosno's employment ending on September 30, 1993, unless extended by PBS on a year-to-year term. PBS alleged that Rosno's title was "Tax Specialist," that Rosno was employed as a certified public accountant, and that Rosno's duties included managing PBS' accounting and payroll services, providing services for PBS' clients, and performing other tasks as required.

PBS alleged that on November 10, 1995, Rosno met with one of PBS' officers, Steve Strasheim, and that Rosno presented Strasheim with a written "Notice of Termination," effective in 90 days. PBS alleged that Rosno stated at this meeting that he considered certain noncompetition and trade secret provisions in the contract to be invalid and that he would be asking PBS' clients to become clients of his new accounting firm. PBS alleged that on November 13, Rosno and Strasheim met again and after Rosno repeated that he would continue to solicit PBS' clients, Strasheim terminated Rosno's employment with PBS.

In its first petition, PBS set out certain of the relevant portions of the contract between Rosno and PBS. The employment contract was not attached to the original petition. It was alleged that sections 7a and b of the contract provided as follows:

a. In-Term Covenant: The parties agree that during the term of this Agreement and during the term of Rosno's employment by the Employer, the respective clients of the Employer shall remain the clients of the Employer and that Rosno shall not, directly or indirectly, whether as an officer, director, shareholder, partner, advisor, consultant or employee or in any other capacity do business for or with any client of the employer outside of the scope of duties rendered for Employer pursuant to this Employment Agreement. . . .

b. Post-Term Covenant: Rosno further covenants and agrees that in the event of the termination of his employment, for whatever reason, he shall not directly or indirectly solicit, contact or perform services for any of Employer's clients for his own benefit or as an officer, director, shareholder, partner, advisor, consultant or employee of any third party. Said Post-Term Covenant shall continue for a period of two (2) years following such

termination or separation for any reason whatsoever and shall include the area located within twenty-five (25) miles of Lincoln, Nebraska.

PBS alleged that either during Rosno's employment or within 2 years after his termination, Rosno directly or indirectly solicited, contacted, or performed services for PBS' clients. PBS alleged that section 8 of Rosno's contract provided as follows:

Enforcement: Employer shall be entitled to enforce the terms and provisions of the above and foregoing paragraph by injunction and/or restraining order issued by a court of competent jurisdiction in addition to any other rights, remedies or procedures that may be allowed at law and available to the Employer.

Rosno agrees that in the event he directly or indirectly, or in any capacity with another entity or person performs services for a client of Employer within two (2) years after his termination with Employer that he shall pay a liquidated amount of the total amount of billings received by Employer during the two (2) year period prior to Rosno's violation of his non-competition covenant.

In its petition, PBS alleged that under section 8 of the contract, Rosno owed PBS $41,433 and additional damages yet to be determined. PBS requested these amounts in its original and subsequent petitions, along with interest as allowed by law and such other and further relief as may be just and equitable.

On October 17, 1996, Rosno filed a "Motion to Make More Definite and Certain and Notice of Hearing." After hearing, the trial court sustained Rosno's motion in part, directing PBS to file an amended petition, with a copy of the written contract between the parties attached, and further directing PBS to set forth with particularity the type of damages sought and the amount of special damages. In subsequent petitions, PBS indicated that the damages sought were liquidated.

On November 19, 1996, PBS filed a first amended petition, attached to which was a copy of the contract. A review of the contract shows that following the typed provisions pertaining to the postterm covenant in section 7b, there is handwritten matter initialed by the parties providing that the postterm covenant not to compete shall not apply to clients listed in "Exhibit I."

Exhibit I was attached to the first amended petition and lists approximately 95 clients of PBS.

On December 3, 1996, Rosno filed a demurrer to PBS' first amended petition, stating that PBS' first amended petition failed to state facts sufficient to constitute a cause of action. In a journal entry dated April 10, 1997, the trial court sustained Rosno's demurrer, concluding that the covenant alleged in PBS' first amended petition is impermissibly restrictive because it prohibits Rosno from contacts with " 'any of Employer's clients.' " The trial court granted PBS leave to file a second amended petition.

PBS filed a second amended petition on May 14, 1997. In its second amended petition, PBS alleged that prior to October 1, 1992, Rosno was employed by Dale Gruntorad & Co. (Gruntorad), an accounting firm in Lincoln, Nebraska, and that while at Gruntorad, Rosno did substantial amounts of work for PBS and its clients on Gruntorad's behalf. PBS alleged that through this work, Rosno became familiar with significant aspects of PBS' business, which PBS has run for 37 years. PBS alleged that during the past 37 years, it has developed substantial goodwill with its clients.

PBS alleged that on or about June 1, 1992, Rosno approached PBS for a job, and that after several discussions, PBS advised Rosno that because he was familiar with its business, PBS would permit Rosno to contract with PBS if he left Gruntorad and started his own accounting firm. Rosno stated that he could not start his own accounting firm under the noncompete agreement he had with Gruntorad, but that his noncompete agreement with Gruntorad would not prevent him from entering into an employment relationship with PBS. PBS further alleged that Rosno proposed that he enter into a noncompete covenant with PBS, stating that this would allow him to leave Gruntorad without violating his noncompete agreement with Gruntorad.

In its second amended petition, PBS alleged that based on Rosno's representations, PBS agreed to hire Rosno and enter into an employment contract containing certain noncompete provisions. PBS alleged that Rosno was aware of the noncompete provisions before entering into the contract. PBS also alleged that prior to entering into the contract with Rosno, the

parties discussed the fact that Rosno would have substantial personal contact with many of PBS' clients and that PBS had developed substantial goodwill with these clients and that this goodwill was a valuable business asset. PBS alleged that prior to signing the contract, the parties amended the contract by interlineation pursuant to Rosno's request, providing that certain clients and accounts of PBS be specifically excluded from the noncompete provision for Rosno's benefit as reflected in exhibit I to the contract.

In its second amended petition, PBS alleged that while employed at PBS, Rosno "had the responsibility and did review each and every tax return that [PBS] prepared" and that Rosno "was actively involved in each client's file." PBS alleged that after it hired Rosno, Rosno had access to and worked in every aspect of PBS' business. PBS alleged that it relied on Rosno for all aspects of its business. It specifically alleged that Rosno "had substantial contact with virtually all of [PBS'] clients" during the course of his employment with PBS. Lastly, PBS alleged that Rosno had violated the terms of his contract with PBS by siphoning away PBS' goodwill.

On May 16, 1997, Rosno filed a demurrer to PBS' seconded amended petition, stating that PBS' second amended petition failed to state facts sufficient to constitute a cause of action. On September 19, the trial court filed an order granting Rosno's demurrer. In its order, the trial court cited *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997). The trial court examined the contract and reasoned, inter alia, that the covenant not to compete therein was more restrictive than the covenant found invalid in *Moore* and was, therefore, unenforceable. The second amended petition was dismissed. PBS appeals.

## ASSIGNMENTS OF ERROR

On appeal, PBS argues that the district court erred in finding that its second amended petition did not state a cause of action and in granting Rosno's demurrer and dismissing the second amended petition.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together

with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *State ex rel. Wood v. Fisher Foods*, 254 Neb. 982, 581 N.W.2d 409 (1998). In ruling on a demurrer, the petition is to be liberally construed; if as so construed the petition states a cause of action, the demurrer is to be overruled. *Coburn v. Reiser*, 254 Neb. 495, 577 N.W.2d 289 (1998).

## ANALYSIS

PBS contends that the district court erred in granting Rosno's demurrer to its second amended petition because the noncompete provision in Rosno's contract is valid and enforceable under the facts alleged in the second amended petition and applicable law. Rosno argues that PBS' second amended petition fails to state a cause of action because the noncompete clause in Rosno's contract is more restrictive than reasonably necessary to protect PBS' legitimate interest and, thus, invalid and unenforceable. In support of its position, PBS refers to the general rule that in an employment agreement, a covenant not to compete may be valid only if it restricts a former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and had personal contact. *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987).

To determine whether a covenant not to compete is valid, a court must determine whether a restriction is reasonable in the sense that it is not injurious to the public, that it is not greater than is reasonably necessary to protect the employer in some legitimate interest, and that it is not unduly harsh and oppressive on the employee. *Moore, supra.* There is no indication or claim that enforcement of the noncompete clause in Rosno's contract will be injurious to the public or that the restriction is "unduly harsh" as that expression is used in the cases. Accordingly, we focus our analysis on whether or not the restriction of the covenant is no greater than reasonably necessary to protect PBS' legitimate interest as alleged in the second amended petition.

An employer has a legitimate business interest in protection against a former employee's competition by improper and

unfair means, but is not entitled to protection against ordinary competition from a former employee. *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997), citing *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990). In *Moore*, we stated:

> " 'To distinguish between "ordinary competition" and "unfair competition," courts and commentators have frequently focused on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. Where an employee has substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition.' "

*Id.* at 401, 562 N.W.2d at 539, quoting *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

In its second amended petition, PBS alleges that Rosno had substantial personal contact with virtually all of PBS' clients, the inference being that Rosno had the opportunity to appropriate PBS' goodwill with its clients. In the instant case, PBS alleged facts in its second amended petition sufficient to show that PBS has a legitimate interest in protecting customer goodwill. A determination that an employer had a legitimate business interest in customer goodwill does not automatically validate a covenant not to compete. *Moore, supra,* citing *Vlasin, supra.* The issue before us, therefore, is whether it can be conclusively determined from the pleadings that the restriction of the noncompete covenant in Rosno's contract is greater than reasonably necessary to protect legitimate interests of PBS.

The relevant postterm noncompete clause in Rosno's contract, section 7b, with the handwritten addendum included, provides as follows:

> Rosno further covenants and agrees that in the event of the termination of his employment, for whatever reason, he shall not directly or indirectly solicit, contact or perform services for any of Employer's clients for his own benefit

or as an officer, director, shareholder, partner, advisor, consultant or employee of any third party. Said Post-Term Covenant shall continue for a period of two (2) years following such termination or separation for any reason whatsoever and shall include the area located within twenty-five (25) miles of Lincoln, Nebraska. The post-term covenant shall not apply to clients listed on Exhibit I.

With respect to the propriety of the scope of the noncompete covenant, Rosno cites *Moore, supra*, and argues that PBS failed to state a cause of action because its covenant not to compete generally prohibits Rosno from soliciting PBS' clients, regardless of whether or not Rosno had personal contact with these clients while at PBS, and that the second amended petition shows on its face that the noncompete covenant is unenforceable. PBS responds that the rule set out in *Moore* is a general rule and that it should have been allowed to produce evidence to support the facts alleged in its second amended petition and to show that the noncompete provision in Rosno's contract was not more restrictive than necessary to protect PBS' legitimate interests under the facts.

In its second amended petition, PBS alleged that the noncompete provision was placed in Rosno's contract at Rosno's request, that Rosno insisted that approximately 95 of PBS' clients be omitted from the noncompete provision as reflected in exhibit I to the contract, that Rosno had substantial contact with PBS' clients before he came to work for PBS, that PBS expected that Rosno would continue to have substantial personal contact with PBS' clients upon joining PBS, and that Rosno did in fact have substantial personal contact with virtually all of PBS' clients while at PBS. We conclude that PBS' second amended petition stated a cause of action and that Rosno's demurrer to this petition should have been overruled, thereby allowing PBS to proceed to produce evidence as to the propriety of the inclusion of this noncompete covenant in Rosno's contract.

In *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 668, 407 N.W.2d 751, 756 (1987), this court reviewed several cases involving noncompete covenants and stated the general rule that a covenant not to compete in an employment contract "may be

valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact." In *Polly*, this court stated that generally, a non-compete covenant is more restrictive than reasonably necessary if it restricts an employee from working for or soliciting all of the former employer's clients or accounts, regardless of whether the former employee actually did business with and had personal contact with those clients. In *Polly*, this court reviewed *Dana F. Cole & Co. v. Byerly*, 211 Neb. 903, 320 N.W.2d 916 (1982), and observed that *Dana F. Cole & Co.*, by virtue of its facts, presented an exception to the general rule.

In *Dana F. Cole & Co., supra*, this court held that based on the evidence at trial, a covenant which restricted a former branch manager of an accounting firm from practicing accounting within 75 miles of the office he had managed was reasonable and enforceable. This court held that such a covenant was valid in light of evidence which showed that branch managers had personal relationships with clients served and that on the basis of past experience, the employer had the need to protect itself from the risk of a branch manager's taking clients with him or her when he or she left its employ.

In *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997), this court affirmed the grant of an employee's motion for summary judgment on a breach of covenant not to compete claim, determining that the scope of the covenant not to compete in that case was greater than necessary to protect a personnel recruiting corporation's legitimate interests and, thus, was unenforceable. In *Moore*, this court repeated the general rule that a covenant not to compete may be valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and had personal contact. In *Moore*, the covenant involved precluded the employee from entering into business with anyone of whom he had knowledge due to his employment with the corporation, rather than those clients of the corporation with whom the employee merely did business and had personal contact. In addition, the covenant in question precluded the employee from

working in employment recruitment anywhere in the continental United States. In *Moore*, the summary judgment evidence showed that while with the employer, Moore worked primarily with clients of the employer in the Midwest, indicating that Moore had little personal contact with the employer's clients outside the Midwest. The employer failed to rebut the evidence of overbreadth or otherwise propose a rationale for such a broad restriction. The restriction was, thus, untenable.

In the instant case, PBS has alleged certain facts in its second amended petition which because they are well pled, we accept as true, together with the proper and reasonable inferences of law and fact which may be drawn therefrom. See *State ex rel. Wood v. Fisher Foods*, 254 Neb. 982, 581 N.W.2d 409 (1998). After reviewing PBS' second amended petition, and liberally construing it as we must, we conclude that PBS' second amended petition taken as a whole states a cause of action. In this regard, we note that PBS has alleged, inter alia, that Rosno has had substantial contact with virtually all of PBS' clients. The inferences of law and fact from the second amended petition are that Rosno is being restricted from working for or soliciting PBS' clients or accounts with whom Rosno actually did business and had personal contact and that in his employment contract the covenant not to compete with respect to all of PBS' clients could be enforceable. We therefore conclude that the allegations in the second amended petition and the reasonable inferences of law and fact therefrom indicate that the noncompete covenant may be proper and that PBS should be permitted to present evidence to support the facts alleged in its second amended petition.

## CONCLUSION

For the reasons stated above, we reverse the trial court's September 19, 1997, order granting Rosno's demurrer and dismissing the second amended petition and remand this cause to the district court with directions to reinstate PBS' second amended petition.

REVERSED AND REMANDED WITH DIRECTIONS.