PATRICK J. MERTZ, APPELLEE, V.
PHARMACISTS MUTUAL INSURANCE COMPANY, APPELLANT.
625 N.W. 2d 197

Filed May 4, 2001.   No. S-00-097.

Edward G. Warin and Patrick J. Barrett, of McGrath, North, Mullin & Kratz, P.C., for appellant.

George B. Achola, of Walentine, O'Toole, McQuillan & Gordon, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Pharmacists Mutual Insurance Company (Pharmacists) appeals from a summary judgment order in favor of appellee, Patrick J. Mertz, a former employee. The district court found a

covenant not to compete clause in the party's employment agreement unenforceable.

The threshold question in this appeal is whether we apply Nebraska or Iowa substantive law. We look to the Restatement (Second) of Conflict of Laws §§ 6 and 196 (1971) to determine the enforceability of the noncompete clause. Applying the above sections, we determine Nebraska law controls, and the covenant's restriction is greater than is reasonably necessary to protect Pharmacists' interest. We affirm.

## BACKGROUND

In 1996, Pharmacists and Mertz entered into a written employment agreement in Iowa for Mertz to work as an insurance agent for Pharmacists. Pharmacists is an Iowa corporation authorized to underwrite and sell insurance in Nebraska. Pharmacists offers a full line of business and personal insurance products, but particularly focuses on pharmacists and pharmacies. At the time the agreement was negotiated and executed, Mertz lived in Iowa. After Mertz was hired, he moved to Nebraska to work as Pharmacists' only sales representative for most of Nebraska, except for some of the western counties. Mertz voluntarily resigned his employment in 1999.

The agreement contained a covenant not to compete clause, which stated:

It is agreed between the Representative and the Company that the Company has a continuing interest and right in the relationship it has with the customers and the goodwill that exists between its customers and the Company. In recognition of this interest and right and in consideration of employment and attendant benefits of employment, the Representative agrees that he/she will not sell or solicit Property and Casualty Insurance or Life and Health Insurance to pharmacists or pharmacies or any current customer of Pharmacists Mutual Insurance Company, The Pharmacists Life Insurance Company or Pro Advantage Services, Inc. for a period of three (3) years within the geographical territory serviced by the Representative at the time of termination of this agreement or in any territory serviced by him/her within three (3)

years prior to his/her termination. The Representative acknowledges that many of PHARMACISTS MUTUAL INSURANCE COMPANY's policies are written for a term of three (3) years, and that a three (3) year prohibition as set forth in this paragraph is reasonable.

The agreement did not contain a choice-of-law provision.

Mertz filed a petition for declaratory judgment in district court seeking to have the covenant not to compete clause declared unenforceable as a matter of law. Pharmacists filed a counterclaim for breach of contract. Mertz then filed a motion for partial summary judgment on the covenant's enforceability. In his affidavit, Mertz specifically states that he conducted business only within the State of Nebraska. This fact was not contradicted by Pharmacists. The court determined that Nebraska's substantive law should apply and that under Nebraska law, the covenant not to compete clause was overly broad and was therefore unenforceable.

## ASSIGNMENTS OF ERROR

Pharmacists assigns as error the district court's finding that (1) there were no genuine issues of material fact; (2) Nebraska's substantive law controlled the issue of whether the covenant not to compete clause was enforceable; (3) under Nebraska law, the covenant not to compete clause was unenforceable as a matter of law; and (4) the covenant did not fall into an exception to unenforceability recognized by Nebraska law.

## STANDARD OF REVIEW

Summary judgment is proper where the facts are uncontroverted and the moving party is entitled to judgment as a matter of law. *Prochaska v. Douglas Cty.*, 260 Neb. 642, 619 N.W.2d 437 (2000); *Alegent Health Bergan Mercy Med. Ctr. v. Haworth*, 260 Neb. 63, 615 N.W.2d 460 (2000). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Bates v. Design of the Times, Inc.*, ante p. 332, 622 N.W.2d 684 (2001); *Allstate Ins. Co. v. LaRandeau*, ante p. 242, 622 N.W.2d 646 (2001).

■■■ Which state's law governs an issue is a question of law. See *Powell v. American Charter Fed. Sav. & Loan Assn.*, 245 Neb. 551, 514 N.W.2d 326 (1994). When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion reached by the trial court. *North Bend Senior Citizens Home v. Cook, ante* p. 500, 623 N.W.2d 681 (2001); *Doksansky v. Norwest Bank Neb.*, 260 Neb. 100, 615 N.W.2d 104 (2000).

## ANALYSIS

Pharmacists argues that Iowa's substantive law should determine the validity of the agreement's covenant not to compete clause and that under Iowa law, the covenant is enforceable. Mertz argues that the district court correctly found that Nebraska law should govern this issue and that under Nebraska law, the covenant is overbroad and therefore unenforceable.

### CONFLICT OF LAWS

■ Pharmacists correctly notes that this court has adopted the Restatement (Second) of Conflict of Laws § 188 (1971). See *Powell v. American Charter Fed. Sav. & Loan Assn., supra.* The Restatement, *supra* at 575, provides, in relevant part:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*These contacts are to be evaluated according to their relative importance with respect to the particular issue.*

(Emphasis supplied).

■ But the indication of this rule is that the importance of any particular factor will depend upon the contract issue in dispute. For instance, when the issue in dispute is contract formation, the state where the negotiations and contracting occurred would have the most significant relationship to the transaction. In this case, no one disputes whether a contract was validly executed. Rather, the issue is whether the covenant not to compete is enforceable. Thus, we must determine which state has the most significant relationship to this transaction with respect to the covenant not to compete.

We find guidance from the Restatement, *supra*, § 196. While § 188 sets out the general contacts to consider in contract cases involving conflict of law disputes, §§ 189 through 197 deal with conflict of laws disputes with regard to specific types of contracts. The Restatement, *supra*, § 196 at 623, applies to contracts for the rendition of services and provides:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the [sic] event the local law of the other state will be applied.

The comments to § 196 indicate this rule was intended to apply to questions regarding the validity of a noncompetition clause. See *id.*, comment *a.* at 624 ("[t]he law selected by application of the present rule determines such questions as . . . the validity of a clause forbidding the employee from entering a business competitive with that of the employer for a stated period after the termination of the employment . . .").

■ The effect of § 196 is to create a presumption that the state where services are to be performed is the state having the most significant relationship to the transaction when the issue is the validity of a covenant not to compete. If another state has a more significant relationship under the general principles stated in the Restatement, *supra*, § 6, then the law of that state would be applied.

Under the Restatement (Second) of Conflict of Laws § 6(2) at 10 (1971), the general factors to consider for any type of dispute when choosing the applicable rule of law are as follows:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

In this case, no evidence was submitted showing that Mertz ever performed any services in Iowa. In his affidavit, Mertz stated he had conducted business only in Nebraska. The uncontroverted evidence shows that Mertz was hired to work in Nebraska and that all of his services were performed in this state. Thus, only competition in Nebraska is affected by this agreement, and Iowa's policies on the validity of such covenants are not offended.

Although protecting parties' expectations is always a central policy consideration in contracts, that interest does not supersede all other public policies. In Nebraska, this court has refused to enforce postemployment covenants not to compete which are broader than reasonably necessary to protect legitimate business interests on the ground that such covenants are against public policy and void. See *Presto-X-Company v. Beller*, 253 Neb. 55, 568 N.W.2d 235 (1997). Iowa's interest in protecting the expectations of the parties is outweighed by Nebraska's strong public policy considerations on this issue. See *Rain and Hail Ins. Service, Inc. v. Casper*, 902 F.2d 699 (8th Cir. 1990) (affirming district court's refusal to enforce choice-of-law provision designating Iowa law as governing covenant not to compete because application of Iowa law would be contrary to fundamental policy under Nebraska law). Accordingly, Nebraska law should be applied to determine the validity of the covenant.

## ENFORCEABILITY

Under Nebraska law, in order to determine whether a covenant not to compete is valid, we consider whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee. See, *Professional Bus. Servs. v. Rosno*, 256 Neb. 217, 589 N.W.2d 826 (1999); *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997).

In this case, the district court found the restriction was greater than reasonably necessary to protect the employer's legitimate interest. Mertz does not argue that the covenant is injurious to the public or unduly harsh and oppressive on the employee. Therefore, our focus is whether the covenant is greater than is reasonably necessary to protect the employer in some legitimate interest.

An employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but is not entitled to protection against ordinary competition from a former employee. *Professional Bus. Servs. v. Rosno, supra.* In order to distinguish between "ordinary competition" and "unfair competition," this court has consistently focused on the employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers:

> " ' "Where an employee has substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition." ' "

*Id.* at 224, 589 N.W.2d at 831. See, also, *Moore v. Eggers Consulting Co., supra*; *Whitten v. Malcolm*, 249 Neb. 48, 541 N.W.2d 45 (1995); *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990).

The record reflects that Mertz was Pharmacists' only employee in most of Nebraska for 3 years. Presumably, he would have had the opportunity to appropriate Pharmacists'

goodwill. See *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986) (concluding that sales representatives have unique opportunity to appropriate employer's goodwill). Thus, Pharmacists has a legitimate interest in protecting its existing client base from unfair competition from a former employee. But "[a] determination that an employer had a legitimate business interest in customer goodwill does not automatically validate a covenant not to compete." *Professional Bus. Servs. v. Rosno*, 256 Neb. at 224, 589 N.W.2d at 832.

As a general rule, "a covenant not to compete in an employment contract 'may be valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact.'" *Id.* at 225-26, 589 N.W.2d at 832, quoting *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987).

Here, the covenant not to compete clause restrained Mertz from selling or soliciting "Property and Casualty Insurance or Life and Health Insurance to pharmacists or pharmacies or any current customer" of Pharmacists companies. The covenant does not limit itself to those clients Mertz did business with or personally contacted.

Pharmacists argues, however, that this court's recent decision in *Professional Bus. Servs. v. Rosno*, 256 Neb. 217, 589 N.W.2d 826 (1999), is similar to the covenant in this case and argues that this covenant is not overly broad. In *Professional Bus. Servs.*, the covenant prohibited the employee from soliciting, contacting, or performing services "'for any of Employer's clients,'" and the district court sustained a demurrer. 256 Neb. at 219, 589 N.W.2d at 829. The employee argued the covenant was invalid because it prohibited him from soliciting any of the employer's clients regardless of whether or not he had personal contact with them. This court held that the employer's second amended petition stated a valid cause of action because it alleged that the employee had substantial personal contact with virtually all of the employer's clients. *Id.*

This case is distinguishable from *Professional Bus. Servs.* because even if Pharmacists could show that Mertz had personal contact with virtually every client it had in Nebraska,

the covenant also restricted Mertz from soliciting or selling to individuals and businesses that were not customers of Pharmacists. Not only did the covenant fail to limit its terms to those clients with whom Mertz actually did business or had personal contact, it fails to limit itself in any way to Pharmacists' existing client base in Nebraska. Mertz stated in his affidavit that the Nebraska Pharmacists Association reports there are 1,500 pharmacists and 630 pharmacies in Nebraska. Of the 630 pharmacies, Mertz stated that only 84 were served by Pharmacists. The covenant is therefore broader than reasonably necessary to protect Pharmacists' legitimate interest in customer goodwill. See, e.g., *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997).

Furthermore, Pharmacists argues that there is an exception to the rule first announced in *Polly v. Ray D. Hilderman & Co., supra*. Pharmacists contends this court recognized an exception in *Dana F. Cole & Co. v. Byerly*, 211 Neb. 903, 320 N.W.2d 916 (1982).

In *Dana F. Cole & Co.*, this court held that a covenant which restricted a former branch manager of an accounting firm from practicing within 75 miles of the office he managed was reasonable and enforceable. The covenant was found valid in light of evidence showing that the branch managers had personal relationships with the clients served and that one of the employer's branch offices had lost a significant amount of business in the past when a manager left its employ.

The factors we considered in *Dana F. Cole & Co.* were

"the degree of inequality in bargaining power; the risk of the covenantee losing customers; the extent of respective participation by the parties in securing and retaining customers; the good faith of the covenantee; the existence of sources or general knowledge pertaining to the identity of customers; the nature and extent of the business position held by the covenantor; the covenantor's training, health, education, and needs of his family; the current conditions of employment; the necessity of the covenantor changing his calling or residence; and the correspondence of the restraint with the need for protecting the legitimate interests of the covenantee."

211 Neb. at 906-07, 320 N.W.2d at 918, quoting *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982) (listing factors cited by *Dana F. Cole & Co.* but affirming lower court's refusal to enforce covenant on ground that restriction included former clients and was therefore impermissibly broad).

We later clarified, however, that the factors cited by *Philip G. Johnson & Co.* and *Dana F. Cole & Co.* are part of a balancing test used under the third inquiry of the validity test to determine whether a restraint is unduly harsh or oppressive on the employee—a consideration not at issue in this case. See, *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986); *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391 (1991). Moreover, it was not until 1987 that this court decided *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987), 5 years after *Dana F. Cole & Co.* was decided. See *Polly v. Ray D. Hilderman & Co., supra.*

If *Dana F. Cole & Co. v. Byerly, supra*, were decided today, we would have also determined whether the restriction was greater than is reasonably necessary to protect the employer in some legitimate interest. To the extent that *Dana F. Cole & Co.* can be interpreted as an exception to the rule set forth in *Polly v. Ray D. Hilderman & Co., supra*, it is disapproved and overruled.

Finally, Pharmacists cites *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997), for the proposition that this court has recently reconsidered the rule announced in *Polly v. Ray D. Hilderman & Co., supra*. Pharmacists argues that the emphasis in *Polly* was on whether the former employee actually did business with or had personal contacts with the employer's clients, whereas the emphasis in *Moore* was on the reasonableness of the geographic restrictions. It is correct that *Polly* was not decided on the basis of the geographic restriction. However, this court did not say such restrictions were irrelevant. Rather, we found the restriction invalid regardless of whether the geographic restriction was reasonable. As we pointed out in *Moore v. Eggers Consulting Co., supra*, covenants not to compete may also be greater than reasonably necessary based on the scope of a geographic restriction when the restriction has no relationship to a client base. See, also, *American Sec. Servs. v. Vodra, supra* (analyzing whether covenant was reasonable restriction in terms

of space and time). The analysis in *Moore*, however, does not indicate that this court has abandoned the standard announced in *Polly*. On the contrary, part of the reason this court found the covenant unenforceable in *Moore* was because it attempted to prohibit the employee from soliciting clients that he "did not personally work with and had never met." 252 Neb. at 403, 562 N.W.2d at 540.

We conclude that the district court correctly determined that the covenant not to compete clause was unenforceable as a matter of law. The judgment of the district court is affirmed.

AFFIRMED.

STEPHAN, J., not participating.