C & L INDUSTRIES, INC., DOING BUSINESS AS
CELEBRITY STAFFING, A NEBRASKA CORPORATION, APPELLANT
AND CROSS-APPELLEE, V. VIRGINIA KIVIRANTA,
APPELLEE AND CROSS-APPELLANT.
698 N.W.2d 240

Filed June 14, 2005.    No. A-03-630.

Christopher R. Hedican and Randy J. Stevenson, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., for appellant.

Steven E. Achelpohl for appellee.

INBODY, Chief Judge, and IRWIN and SIEVERS, Judges.

IRWIN, Judge.

## I. INTRODUCTION

C & L Industries, Inc. (C&L), appeals from an order of the district court finding that a covenant not to compete signed by C&L's former employee, Virginia Kiviranta, is unenforceable as written because it is overly broad as well as unduly harsh and oppressive. On appeal, C&L asserts that the district court erred in finding the covenant unenforceable and in making various evidentiary rulings. Kiviranta cross-appeals and asserts that the district court erred in not granting Kiviranta's motions for directed verdict. We find that the covenant is properly limited to clients or customers of C&L with whom Kiviranta actually did business and had personal contact and that accordingly, the covenant is not overly broad as written. We also do not find the covenant to be unduly harsh and oppressive. Because of our resolution concerning the enforceability of the covenant, we need not discuss the alleged evidentiary errors. We find no merit to Kiviranta's assertion on cross-appeal. We reverse the judgment of the district court and remand the case for further proceedings.

## II. BACKGROUND

C&L provides recruiting services for companies in the Omaha, Nebraska, area. C&L supports businesses with human resource issues by providing temporary employees and by identifying individuals to be hired by the company. According to testimony presented at trial, there are more than 40 businesses in the Omaha area which provide services comparable to those provided by C&L. Kiviranta worked for C&L for approximately 7 years, ending her employment with C&L on April 26, 2001. Kiviranta had never worked in the staffing industry prior to working for C&L, and "everything [she] learned about the staffing industry [she] learned from the people that [she] worked with" at C&L. During the course of her employment with C&L, Kiviranta held different job titles and responsibilities, but for approximately the last 3 years of her employment with C&L, Kiviranta was a senior staffing supervisor.

The most important responsibility of a senior staffing supervisor for C&L is developing relationships with potential clients and building sales within the senior staffing supervisor's accounts. Good personal relationships between the senior staffing supervisor and the clients lay the foundation for future business and increased business with the clients. Development of such relationships requires the senior staffing supervisor to discuss with the client that client's business, business trends, future growth possibilities, and business changes which could impact C&L's business with that client. Senior staffing supervisors develop good personal relationships with clients by personally contacting the clients, delivering gifts, taking clients out to lunch, and working to build a trust factor to foster future business between the senior staffing supervisor and the clients.

Kiviranta was very effective as a senior staffing supervisor for C&L. In each of the years 1998, 1999, and 2000, Kiviranta was C&L's top producer. Kiviranta earned approximately $115,000 in 2000 and approximately $100,000 in 1999, which earnings included a base salary and commissions.

C&L requires all employees to sign covenants not to compete. Employees are periodically required to sign new covenants not to compete, and the record indicates that employees are required to sign such covenants at the time of hire, during

performance reviews, and whenever there is a change in the employee's position or salary. On August 9, 2000, Kiviranta signed a new covenant not to compete during a performance review; Kiviranta also received an increase in her base salary as a result of her performance review. The covenant provided, in pertinent part, as follows:

THIS EMPLOYMENT AGREEMENT ("Agreement") is entered into on the 9 day of August 2000, between Virginia Kiviranta ("Employee") and [C&L] ("Employer"), the consideration for which is employment or continued employment of Employee with Employer. The parties agree as follows:

1. *Contacts.* Employee agrees that during the period of employment and for one (1) year thereafter, he will not, directly or indirectly, (i) solicit . . . a client of Employer or its affiliates . . . if Employer's client was one with whom Employee actually did business and had direct personal contact during his period of employment . . . .

On April 26, 2001, Kiviranta tendered her resignation to C&L. Kiviranta began working for Noll Human Resources (Noll) on April 30. Kiviranta's job title and responsibilities were the same at Noll as they were at C&L. Kiviranta testified that after she began working at Noll, she contacted at least 70 percent of the clients she had serviced while working for C&L. Kiviranta acknowledged that it was "possible" that she had previously, in a deposition, indicated that she contacted 85 or 90 percent of the clients she had serviced while working for C&L. Kiviranta further testified that since she began working for Noll, she has actually made job placements with a number of those clients.

On May 11, 2001, C&L filed a petition seeking damages and injunctive relief, alleging that Kiviranta had breached the covenant not to compete. On June 26, Kiviranta filed an answer in which she alleged that the covenant was unenforceable. On August 21, Kiviranta filed an amended answer and included a counterclaim for past wages due.

On December 6, 2001, the district court entered an order finding that the covenant not to compete was not ambiguous, but that the covenant was overbroad and unenforceable. The court denied C&L's request for temporary injunctive relief. On May 9, 2002,

the district court entered a judgment denying permanent injunctive relief, but "stay[ing]" resolution of the issue of monetary damages. On May 16, C&L filed a notice of appeal. On August 16, this court dismissed the appeal because the district court's order was not a final, appealable order.

On March 28, 2003, the parties entered into a written stipulation to bifurcate the trial in this case so that the issue of liability would be resolved first and that the issue of remedy, whether monetary damages or injunctive relief, would be resolved separately. In the stipulation, Kiviranta dismissed her counterclaim without prejudice. On May 6, the district court entered a judgment on the issue of liability, finding that the covenant not to compete was impermissibly overbroad as written and that the covenant was unduly harsh and oppressive to Kiviranta. As such, the district court found that the covenant not to compete was unenforceable as written and dismissed C&L's claim. This appeal and cross-appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, C&L asserts, renumbered and restated, that the district court erred (1) in finding that the covenant not to compete is unenforceable as written, (2) in failing to receive and consider evidence proffered by C&L, (3) in receiving and considering evidence proffered by Kiviranta, and (4) in "denying [C&L's] Motion for Temporary and Permanent Injunction and its claim for damages on its breach of contract and unfair competition claim." On cross-appeal, Kiviranta asserts that the district court erred in failing to grant Kiviranta's motions for directed verdict at the close of C&L's case in chief and at the close of all the evidence.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

C&L brought this action seeking both injunctive relief and monetary damages. In such a proceeding, the appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, and when credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the

trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See, *Stephens v. Pillen,* 12 Neb. App. 600, 681 N.W.2d 59 (2004). See, also, *Goeke v. National Farms, Inc.,* 245 Neb. 262, 512 N.W.2d 626 (1994); *Thomsen v. Greve,* 4 Neb. App. 742, 550 N.W.2d 49 (1996).

## 2. C&L's Appeal

C&L asserts that the district court erred in finding that the covenant not to compete is unenforceable as written, in failing to receive and consider certain evidence proffered by C&L, in receiving and considering certain evidence proffered by Kiviranta, and in failing to award C&L any remedy. We find merit to C&L's assertion concerning the enforceability of the covenant as written; as a result, we need not specifically address C&L's assertions concerning the district court's evidentiary rulings. However, because the parties stipulated to bifurcate the trial in this matter, our finding that the covenant is enforceable does not cause us to also find merit to C&L's assertion that the court erred in not granting a remedy.

### (a) Enforceability of Covenant as Written

C&L first asserts that the district court erred in finding that the covenant not to compete is unenforceable as written. The district court found that the covenant is unenforceable for being overly broad and for being unduly harsh and oppressive on Kiviranta. The relevant portion of the covenant not to compete provides as follows:

THIS EMPLOYMENT AGREEMENT ("Agreement") is entered into on the 9 day of August 2000, between Virginia Kiviranta ("Employee") and [C&L] ("Employer"), the consideration for which is employment or continued employment of Employee with Employer. The parties agree as follows:

1. *Contacts.* Employee agrees that during the period of employment and for one (1) year thereafter, he will not, directly or indirectly, (i) solicit . . . a client of Employer or its affiliates . . . if Employer's client was one with whom Employee actually did business and had direct personal contact during his period of employment . . . .

We find that the covenant was properly limited in scope and that the covenant is not unduly harsh and oppressive when balanced against C&L's interest in protecting goodwill.

In *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 110, 680 N.W.2d 176, 184 (2004) (*Rosno II*), the Nebraska Supreme Court stated:

> "To determine whether a covenant not to compete is valid, a court must determine whether a restriction is reasonable in the sense that it is not injurious to the public, that it is not greater than is reasonably necessary to protect the employer in some legitimate interest, and that it is not unduly harsh and oppressive on the employee."

Quoting *Professional Bus. Servs. v. Rosno*, 256 Neb. 217, 589 N.W.2d 826 (1999) (*Rosno I*). Accord, *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001); *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997); *Whitten v. Malcolm*, 249 Neb. 48, 541 N.W.2d 45 (1995); *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990); *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987); *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986). There is no indication or claim that enforcement of the covenant not to compete in this case will be injurious to the public. Accordingly, what must be determined is whether the covenant is overly broad because it is greater than is reasonably necessary to protect C&L in some legitimate interest or whether the covenant is unduly harsh and oppressive on Kiviranta.

### (i) Not Overly Broad

The district court first found that the covenant not to compete is overly broad "in that it makes no distinction between current or former clients of [C&L] with whom [Kiviranta] had contact, covering nearly 8 years and approximately 913 [clients]." The court found that C&L "has no legitimate interest in protecting each and every [client] which [Kiviranta] contacted throughout her 8 years of employment with [C&L]." We disagree with the district court's interpretation of the covenant and find that the covenant, as written, is properly limited in scope to be enforceable under current Nebraska law. C&L has a legitimate business interest in protecting client goodwill, and the restriction in the

covenant is not greater than reasonably necessary to protect that legitimate interest.

It is fundamental in Nebraska that an employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but is not entitled to protection against ordinary competition from a former employee. *Rosno II*; *Mertz v. Pharmacists Mut. Ins. Co., supra*; *Moore v. Eggers Consulting Co., supra*; *Vlasin v. Len Johnson & Co., supra*. To distinguish between "ordinary competition" and "unfair competition," courts and commentators have frequently focused on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. *Id.* Where an employee has substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition. *Id.*

Additionally, some commentators have recognized the unique opportunity of a salesperson to appropriate customer goodwill of an employer and use that goodwill to the employer's disadvantage in a subsequent transaction. *American Sec. Servs. v. Vodra, supra.* " '[T]he possibility is present that the customer will regard, or come to regard, the attributes of the employee as more important in his business dealings than any special qualities of the product or service of the employer.' " *Id.* at 488, 385 N.W.2d at 78, quoting Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625 (1960). Further, " '[s]alesmen and solicitors are generally hired and paid a salary in order that they may help to build up custom, getting acquainted with customers and acquiring their good will.' " *Id.* at 488, 385 N.W.2d at 79, quoting 6A Arthur Linton Corbin, Corbin on Contracts § 1394 (1962).

In the present case, substantial testimony was presented highlighting the importance of Kiviranta's personal relationship with the clients of C&L with whom she did business and had personal contact. Kiviranta herself testified that her most important duties

as senior staffing supervisor for C&L were to develop and maintain consistent personal relationships with the clients. Thus, C&L certainly has a legitimate business interest in protecting its existing client base from unfair competition from Kiviranta, a former employee. But a determination that C&L has a legitimate business interest in client goodwill does not automatically validate the covenant not to compete; the restriction in the covenant must still be no greater than necessary to protect that legitimate business interest.

■ The Nebraska Supreme Court has repeatedly noted that a covenant not to compete in an employment contract " ' "may be valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact." ' " *Rosno II*, 268 Neb. at 105, 680 N.W.2d at 181, quoting *Rosno I*. Accord, *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001); *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997); *Whitten v. Malcolm*, 249 Neb. 48, 541 N.W.2d 45 (1995); *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990); *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987). As such, the Nebraska Supreme Court has found that covenants not to compete are unenforceable if they are not so limited, but, rather, are written to prohibit future solicitation of clients with whom the former employee never did business or had personal contact. See, *Rosno II* (covenant overly broad where it prohibited former employee from soliciting or contacting any of former employer's clients and where former employer could not establish that former employee had done business with and had personal contact with substantially all of former employer's clients); *Mertz v. Pharmacists Mut. Ins. Co., supra* (covenant overly broad where it prohibited selling or soliciting insurance to pharmacists, pharmacies, or current customers of former employer and was not limited to those clients former employee did business with or personally contacted); *Moore v. Eggers Consulting Co., supra* (covenant overly broad where it prohibited soliciting or accepting business opportunities with any client of former employer with whom former employee worked or had knowledge of, including those clients whom former employee did not personally work

with and had never met); *Whitten v. Malcolm, supra* (covenant overly broad where it prohibited practicing dentistry within geographic location and was not limited to former employer's existing customer base); *Vlasin v. Len Johnson & Co., supra* (covenant overly broad where it prohibited former employee from entering insurance business within geographic location and was not limited to former employer's clients with whom former employee did business and had personal contact); *Polly v. Ray D. Hilderman & Co., supra* (covenant overly broad where it prohibited soliciting or working for former employer's clients with whom former employee did not work and did not even know).

In the present case, C&L argues that the covenant not to compete specifically employs the language required by the litany of cases cited above. The covenant in this case is specifically limited to prohibiting Kiviranta from soliciting "client[s] of [C&L] with whom [Kiviranta] actually did business and had direct personal contact during [her] period of employment." Nonetheless, the district court found that the covenant was overly broad, because the court concluded that the covenant was not limited to "current" clients of C&L. The district court went on to reason that C&L had no legitimate interest in protecting goodwill associated with "former" clients who were no longer considered clients of C&L. We disagree with the district court's conclusion that the plain language of the covenant included former clients. We find that the plain meaning of the term "clients" is current clients and does not include former clients.

■ Two Nebraska Supreme Court opinions illustrate our conclusion that the plain meaning of the term "clients" is current, existing clients and that the term does not, without a modifier such as "former" or "future," encompass all clients past, present, or future. See, *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982); *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986). This conclusion is not impacted by the two cases' contrary holdings on the merits raised in each case. In *Philip G. Johnson & Co. v. Salmen*, 211 Neb. at 129, 317 N.W.2d at 904, the Nebraska Supreme Court found unenforceable a covenant not to compete which undertook to prohibit the former employee from earning fees from "clients or former clients" of the former employer. The Supreme Court noted that

the former employer "certainly can have [no interest] in its former clients." *Id.* Contrarily, in *American Sec. Servs. v. Vodra*, 222 Neb. at 482, 385 N.W.2d at 75, the Nebraska Supreme Court found enforceable a covenant not to compete, which covenant provided that the former employee would not solicit " 'any customer or former customer' " of the former employer and which covenant was limited only to current or former customers where the former employee had worked physically upon the customer's premises, had acted in a supervisory capacity with respect to the premises, and had acted as a salesman for the former employer in soliciting the customer's business. Both of these cases serve to illustrate our conclusion that the plain meaning of the term "clients" is current, existing clients and that the term does not, without the modifier "former" or "future," encompass all clients past, present, or future. Similarly, the term "client" denotes a current, existing relationship in the following definition: "A person or entity that employs a professional for advice or help in that professional's line of work." Black's Law Dictionary 271 (8th ed. 2004).

As written, the covenant not to compete in this case specifically prohibits Kiviranta from soliciting only those business entities which were current or existing clients of C&L at the termination of Kiviranta's employment and with whom Kiviranta had personally done business and had personal contact. As written, the provision specifically complies with the requirements for enforceability espoused by the Nebraska Supreme Court over the past 18 years, since the court decided the case of *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987). We need not even decide whether C&L might have had a legitimate interest in protecting goodwill associated with former clients such that the phrase "clients or former clients" might have been enforceable. The district court erred in determining that the covenant was overly broad and that it provided a restriction on Kiviranta that was greater than reasonably necessary to protect C&L's legitimate interest in protecting its goodwill.

### (ii) Not Unduly Harsh and Oppressive

The district court also found that the covenant not to compete is unduly harsh and oppressive to Kiviranta. The court did not

specify the basis for its finding that the covenant, as well as being overbroad, is unduly harsh and oppressive; rather, the court based such finding on "the reasons set forth above." The reasons "set forth above" in the district court's order are those discussed above in this opinion concerning the breadth of the covenant and the applicability of its restriction to former clients of C&L. Inasmuch as we have already concluded that the district court misinterpreted the plain language of the covenant in finding that the restriction applied to former clients as well as current clients, and because the protection of C&L's goodwill outweighs any hardship which enforcement of the covenant may have on Kiviranta, the district court's finding that the covenant is unduly harsh and oppressive on Kiviranta is likewise incorrect.

The Nebraska Supreme Court has recognized a balancing test to be applied in determining whether the restraint of a postemployment covenant not to compete is unduly harsh or oppressive and, therefore, unenforceable. The factors or considerations involved in such balancing test are

"the degree of inequality in bargaining power; the risk of the covenantee losing customers; the extent of respective participation by the parties in securing and retaining customers; the good faith of the covenantee; the existence of sources or general knowledge pertaining to the identity of customers; the nature and extent of the business position held by the covenantor; the covenantor's training, health, education, and needs of his [or her] family; the current conditions of employment; the necessity of the covenantor changing his [or her] calling or residence; and the correspondence of the restraint with the need for protecting the legitimate interests of the covenantee."

*American Sec. Servs. v. Vodra*, 222 Neb. 480, 490-91, 385 N.W.2d 73, 80 (1986), quoting *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982). The harshness and oppressiveness on the covenantor-employee is weighed against the protection of a valid business interest of the covenantee-employer. *Id.* However, in the balancing test, there is no arithmetical computation or formula required in a court's consideration of the factors. The factors are not weighted, and there is no prescribed method by which more or less weight is assigned to each factor. *Id.*

Applying the balancing test to the present case, protection of C&L's goodwill outweighs any hardship which enforcement of the covenant may have on Kiviranta. Application of the factors in this case is remarkably similar to application of the factors in *American Sec. Servs. v. Vodra, supra.* Kiviranta had no training or experience in the industry prior to employment with C&L. Any knowledge acquired by Kiviranta concerning the industry was gained through on-the-job training as a C&L employee. Kiviranta is 33 years old, and the record does not indicate any health problems. Kiviranta testified that there are "thousands" of companies in the Omaha area whom she can solicit on behalf of her new employer, Noll, and who are potential clients for Noll, and she testified that Noll has assured her that she will not be forced to give up her job with Noll if the covenant is enforced. As such, enforcement of the covenant will not require Kiviranta to move from her home in Omaha, nor will enforcement absolutely and totally restrict Kiviranta's activities within this geographic location. We conclude that C&L acted in good faith in drafting a narrow covenant not to compete which restricted for a period of 1 year Kiviranta's solicitation of existing clients of C&L with whom Kiviranta did business and had personal contact. Kiviranta acknowledged that notwithstanding having signed the covenant not to compete, she had solicited as much as 90 percent of the clients of C&L with whom she had done business and had personal contact; Kiviranta began capitalizing on the relationship with the clients which she developed while working for C&L immediately upon starting employment with Noll, one of C&L's competitors.

The restriction imposed upon Kiviranta by the covenant not to compete is not unduly harsh and oppressive on Kiviranta and is therefore reasonable. The district court's finding to the contrary is erroneous.

### (b) Evidentiary Rulings

C&L next asserts that the district court erred in finding that certain evidence proffered by C&L should not be admitted and considered and in finding that certain evidence proffered by Kiviranta should be admitted and considered. In light of our finding above that the district court erred in finding that the covenant

not to compete was overly broad as well as unduly harsh and oppressive, we need not further address the alleged errors concerning the admissibility of specific evidence. See *Eisenhart v. Lobb*, 11 Neb. App. 124, 647 N.W.2d 96 (2002) (appellate court not obligated to engage in analysis not necessary to adjudicate case and controversy before it). Independent of the evidentiary matters challenged by C&L, we have found sufficient evidence to find the covenant enforceable.

### (c) Denial of Remedy

C&L next asserts that the district court erred in denying C&L injunctive relief and damages. As noted above, the parties entered into a written stipulation that the case be bifurcated so that the issue of liability would be tried to the court independently of the issue of damages. The stipulation specifically provided that "[i]f the [c]ourt finds that Kiviranta is liable to [C&L] on some or all of [C&L's] causes of action, the parties shall have 90 days within which to complete discovery, after which period the [c]ourt will schedule and hold a trial on the issue of [C&L's] damages." As such, it is apparent to this court that the issue of damages was not even properly before the district court and that evidence of damages should not even have been presented to the district court. The court therefore could not properly have awarded C&L any remedy yet. Rather, after the case is remanded, pursuant to the parties' written stipulation, the issue of damages is yet to be litigated.

### 3. KIVIRANTA'S CROSS-APPEAL

Kiviranta has filed a cross-appeal which asserts that the district court erred in denying Kiviranta's requests for directed verdict at the conclusion of C&L's evidence and at the conclusion of all the evidence. Not only did Kiviranta waive any challenge to the ruling at the conclusion of C&L's evidence by presenting evidence on her own behalf, see *Home Pride Foods v. Johnson*, 262 Neb. 701, 634 N.W.2d 774 (2001), but our resolution of C&L's appeal above also necessitates a finding that Kiviranta was not entitled to a directed verdict on the issue of the enforceability of the covenant not to compete. Kiviranta seeks apparent relief in the cross-appeal for the same reasons she seeks to have the district court's judgment affirmed.

Moreover, we are at a loss to understand why Kiviranta has cross-appealed this issue. Had we found the covenant not to compete unenforceable and affirmed the district court's judgment, the cross-appeal would not be necessary. However, inasmuch as the basis for the cross-appeal is precisely the same as the basis for Kiviranta's argument that the district court's judgment be affirmed, a finding by us that the covenant not to compete is enforceable and the district court's judgment needs to be reversed would, by necessity, render success on the cross-appeal by Kiviranta unachievable. In short, the outcome of the cross-appeal necessarily is dictated by the outcome of the direct appeal, and Kiviranta either wins on the direct appeal and does not need relief by way of a cross-appeal or Kiviranta loses on the direct appeal and cannot possibly win on the cross-appeal. We find the cross-appeal to be without merit.

## V. CONCLUSION

We find that the district court erred in interpreting the plain language of the covenant not to compete. As written, the covenant is properly limited in scope and is not overly broad or unduly harsh and oppressive on Kiviranta. For that reason, the judgment of the district court is reversed and the case is remanded for further proceedings. The cross-appeal by Kiviranta is meritless.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.